In the Matter of the Estate of WALTER F. WELLMAN, Deceased.

Surrogate's Court, Schenectady County, March 15, 1933.

*Reed & Dudo* [*Dwight Nicholas Dudo* of counsel], for Owen R. Griffith, as executor, etc., of Abbie Williams, deceased.

*Arthur E. Bishop*, for Helen S. Wellman (now Schultz), executrix.

CAMPBELL, S. Owen R. Griffith, as executor of the last will and testament of Abbie Williams, late of the village of Lowville, Lewis county, has interposed objections to the original and supplemental accounts in the above-entitled matter as filed in this court by Helen S. Schultz, formerly Helen S. Wellman, widow of the testator herein. The original account was filed March 2, 1931, and the supplemental account December 29, 1932.

The petition alleges that Walter F. Wellman died in the city of Schenectady on February 23, 1930, leaving a last will and testament dated July 3, 1925, and which was admitted to probate in this court on March 20, 1930. In his will he named his widow, now Helen S. Schultz, executrix and trustee and she has qualified and filed a surety company bond in the sum of $15,000. Mr. Wellman also named Mr. Bishop, a Schenectady attorney of high repute and recognized ability, as coexecutor, but Mr. Bishop renounced.

The personal estate of decedent amounted in all to $2,640.61, and real property as set forth in Schedule " B " of the original account, all of which was heavily mortgaged and constituted a liability rather than an asset. None of the realty produced sufficient income to maintain itself and the only real estate worthy of consideration as an asset was the business block known and designated as Nos. 138–142 Jay street, Schenectady, N. Y. This real property was assessed for $70,000 and had as liens five mortgages aggregating more than the assessed valuation, namely, $78,300, at the time of testator's death. The fifth mortgage in the sum of $7,200 was held by Abbie Williams at the time of her death but it has never been recorded in the Schenectady county clerk's office. The first mortgage, held by the New York Life Insurance Company, was in the sum of $37,000, which was duly foreclosed and judgment of foreclosure and sale was rendered and the property sold on December 1, 1932, to Elizabeth Sautter for $39,230.

From the date of death of Walter F. Wellman and the subsequent appointment of his widow as executrix and trustee, the rents from the Jay street property were collected by the trustee named in the

will of decedent, and Mr. Griffith, in his objections, contends that the estate of Abbie Williams is entitled to a *pro rata* share in these rents as a creditor of the estate of Walter F. Wellman.

Counsel for the estate offered to produce the executrix and trustee for examination by the attorneys for the objector and they waived such examination.

Two principal questions are presented to the court for decision: *First,* whether the rents from the Jay street property and other realty went to the executrix as such and, therefore, ought to be available for the payment of claims of general creditors, or whether they went to her as trustee under the terms of the will of Walter F. Wellman, and, *second,* is the executor of the estate of Abbie Williams a general creditor in good standing before this court at the present time.

Taking up the first question, whether the rents went to the executrix as such, or to the trustee, reference must be made to the will itself. Under the " fourth " clause of said will, all the realty is devised to the executor in trust for the benefit of testator's son and of his widow. Under the law existing at the date of decedent's death, rents of real property were payable to the devisee, and were his individual property; hence, these rents are not liable for the claims of general creditors. The disbursement of the rent moneys for the payment of principal installments and interest on the mortgages, and the upkeep of the realty, were properly made by the trustee as such. (*Clift* v. *Moses,* 116 N. Y. 144; *Matter of McComb,* 117 id. 378; *Coann* v. *Culver,* 188 id. 9.)

These cases show that the income from the property did not become assets in the hands of the executrix, but belonged to the beneficiaries of the real estate who were named in the will of decedent and whose duty it was to preserve and maintain the real property.

It appears that the executrix herein duly published a notice for claimants to present their claims against this estate on or before February 3, 1931. The $8,800 claim of Abbie Williams was treated by the executrix as a mortgage on the Jay street property, and payments of interest were made monthly on the same up to and including June, 1931. It now appears that $7,200 of this claim is the amount unpaid on a bond of the decedent secured by an unrecorded mortgage covering the Jay street property, and there is no proof as to the nature of the balance of the claim amounting to $1,600, although the indebtedness is admitted by the executrix.

No notice of claim was ever filed by Abbie Williams, or by her executor, and no notice of a contingent or unliquidated claim under section 207 of the Surrogate's Court Act was ever filed.

The executor of Abbie Williams' estate did not become a general

creditor of this estate until the report of sale of the referee in the action brought to foreclose a prior mortgage on the Jay street property which showed that there was no surplus to be applied on the Williams mortgage. This report was dated December 9, 1932. Under these circumstances this executrix and trustee is not chargeable for any moneys that she may have paid, prior to said report, in satisfaction of any lawful claims as against the executor of Abbie Williams, deceased. (*Matter of Rogers*, 142 Misc. 572; Surr. Ct. Act, §§ 207, 208.)

Regarding the personal property, the accounts show that legitimate testamentary and funeral expenses and the cost of administering this estate exceed the amount of the personal property. Therefore, the other objections interposed by Mr. Griffith are not considered and his objections in their entirety are overruled and disallowed.

Objection is made to the allowance of commissions to the executrix and trustee. I cannot sustain this objection. From the commencement of her duties as executrix and trustee, this estate was hopelessly insolvent but Mrs. Schultz made every possible effort to save the estate and to pay all debts. Having in mind that letters were issued to her on March 20, 1930, shortly after the present financial and industrial depression set in, she was hopeful, as were we all, that the crisis would be of short duration. Therefore, she attempted, under the advice of her counsel, to carry the Jay street property which was the only realty from which she hoped to save the estate, not only for herself but also for the then infant son of the testator. As the depression grew in severity and length of time, she determined she could no longer endure the terrific expenditures under which she was laboring as trustee, and in the fall of 1932 she was compelled to surrender. Surely, she ought not to be condemned because she fought a hard fight to conserve the assets of the estate irrespective of the ultimate outcome.

The record shows she worked hard for three years in her efforts to save this estate, but the forces of the depressed real estate and financial markets, together with conditions in general, overcame her. In this effort she loaned more than $14,000 of her own private and personal funds in her effort to win the fight, and at the present time more than $8,000 of her own money remains unpaid to her account. The court believes she did the best that could have been done under all the circumstances, having in mind the severe conditions under which she labored, and that she ought not to be penalized because of her strenuous efforts. Therefore, the court allows her full commissions as executrix and five per cent upon all

rents collected by her as trustee as provided by the statute. (Surr. Ct. Act, § 285.)

The remaining question concerns the fee to be allowed Arthur E. Bishop, the attorney for the Wellman estate. He has been engaged in handling the affairs of this estate for more than three years and it was under the careful guidance and advice of Mr. Bishop that the personal representative acted.

It appears from the account and the supplemental account, as filed, that the attorney for the executrix and trustee has received no compensation for his services as yet. The supplemental account asks for an allowance to said attorney, and on the argument before me it was urged that this request be considered an application to fix and determine the compensation of the attorney for services rendered to the estate and its representative, and that the amount so fixed be included in a statement of the expenses and claims which are entitled to priority of payment over the claim of said Abbie Williams.

Considering the difficulties involved, Mr. Bishop's high standing at the bar, his ability as an attorney and counselor at law and his fidelity and conscientiousness in his work, this court finds that the reasonable compensation of the attorney for his services to this estate is $1,000. And I further find that the funeral expenses, premiums on the bond of executrix, commissions of executrix and trustee, attorney's fees and disbursements, $300 hereby set off to the widow, taxes assessed on property of the decedent prior to his death, and the amount paid to the Stevens estate pursuant to my decision in a proceeding brought to recover assets of said estate alleged to be in the hands of this decedent at the time of his death, said expenses and claims above mentioned amounting in the aggregate to $9,321.56, were all entitled to priority of payment over the claims of general creditors, including the claim of Abbie Williams.

While the final determination of the estate is not all that was hoped for when the administration was commenced, and is, undoubtedly, disappointing to the executrix, Mr. Bishop and to creditors, still this result has not been the fault of either the executrix and trustee, or the attorney for the estate, but is due to the condition of the times wholly beyond the power of the executrix or the attorney to control. It must be remembered that this estate was administered entirely during the time of the current depression, and had conditions been normal, there is no doubt but what the estate would have been entirely solvent and all claims could have been paid as Mr. Wellman himself, the testator, evidently anticipated at the time he executed his will on July 3, 1925. By reason of the depression, Mr. Wellman's equity in the realty was entirely

wiped out. It seems unfair and unjust to this court that either the executrix or Mr. Bishop, her attorney, should be penalized because of conditions beyond their control when in fact they have struggled and worked hard to make an insolvent estate solvent.

In conclusion, the court holds that each and all of the objections interposed by Mr. Owen R. Griffith to both the intermediate and final accounts are overruled and disallowed, without costs in this proceeding.

Enter decree accordingly.